**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO: 1:26-cv-20441-LEIBOWITZ/Hernandez**

**DONALD BENAINE and SANDRA**
**BENAINE**,

       *Plaintiffs,*

v.

**FAY SERVICING, LLC**,

       *Defendant.*

_____/

## <u>REPORT AND RECOMMENDATION</u>

Donald and Sandra Benaine ("Plaintiffs" or the "Benaines") sued Fay Servicing, LLC ("Defendant") under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*, ("RESPA"), and its implementing regulation, Regulation X, for failing to respond to their loss mitigation letter. Defendant moved to dismiss the complaint (the "Motion"), [ECF No. 8], arguing that, given its communication history with Plaintiffs, it had no duty to respond to their latest submission.[1]  The Honorable David S. Leibowitz referred the matter to us for a report and recommendation.  [ECF No. 13].  For the reasons below, we respectfully recommend that the Motion be **DENIED**.

### Background

Plaintiffs filed a single-count complaint on January 23, 2026, accusing Defendant of violating RESPA, 12 U.S.C. § 2605(k), and its implementing regulation, Regulation X, 12 C.F.R. § 1024.41(c)(1)(ii), by failing to respond to their loss mitigation letter (the "Complaint").  [ECF No. 1 ¶¶ 1–3, 17–27].

The facts underlying the Complaint are these.  In June 2003, the Benaines took out a loan to

---

[1] Plaintiffs responded to the Motion, [ECF No. 11], and Defendants elected not to file a reply.  Accordingly, the matter is ripe for review.

purchase their Florida home.  *Id.* ¶ 12–13.  Defendant eventually assumed servicing the loan.  *Id.* ¶¶ 15–16.  Sometime later—neither party says when—Plaintiffs defaulted on the loan.  *See id.* ¶ 17; [ECF No. 8 ¶ 6].

On August 18, 2025, Plaintiffs sent Defendant a loss mitigation application ("August Submission").  [ECF No. 8 ¶ 7].  Defendant responded the next day, notifying Plaintiffs that their application was missing a Borrower Assistance Form and proof of homeowners insurance.  *Id.*; [ECF No. 8-1].  Defendant gave Plaintiffs until September 18, 2025 to supplement their submission.  [ECF No. 8 ¶¶ 7–8; ECF No. 8-1 at 2].  The record discloses no further communications from Plaintiffs until October 29, 2025, when they submitted a second loss mitigation request (the "October Submission").  [ECF No. 8-2; ECF No. 1 ¶ 17].[2]  According to Defendant, the October Submission still lacked the required proof of homeowners insurance.  [ECF No. 8 ¶ 9].  On December 19, 2025, Plaintiffs sent Defendant a follow-up letter inquiring about the status of the October Submission, [ECF No. 1-3], and Defendant responded to that inquiry on January 19, 2026 (the "January Response"), [ECF No. 8-3 at 4].  [ECF No. 1 ¶ 20].  The January Response summarized the August and October correspondence and informed Plaintiffs that their application remained incomplete. [ECF No. 8-3 at 4].  The letter also noted that Plaintiffs would have to submit a new loss mitigation application because their "incomplete loss mitigation application expired on November 17, 2025." *Id.* Plaintiffs allege they never received Defendant's January Response, [ECF No. 1 ¶¶ 20–22; ECF No. 11 at 3], which appears to have been mailed to Plaintiffs' attorneys, [ECF No. 8-3 at 4].  Defendant's failure to respond to the October Submission, Plaintiffs contend, left them "no way of knowing what their loss mitigation options are based on their loss mitigation application."  [ECF No. 1 ¶ 23].

In the Motion, Defendant attaches its response to the August Submission—but not the

---

[2] The Motion refers to "October 29, 2024," [ECF No. 8 ¶ 8], but that is likely a typographical error as the corresponding exhibit reflects that Plaintiffs' request was sent on October 29, 2025, [ECF No. 8-2 at 1, 40, 58].

August Submission itself—as proof of its pre-October communications with Plaintiffs. [ECF No. 8-1]. It also attaches the October Submission and the January Response. [ECF Nos. 8-2 & 8-3]. Defendant accuses Plaintiff of presenting a selective view of their communications because, in Defendant's view, the October Submission was simply a supplement to the earlier loss mitigation application that did not trigger RESPA's servicer response obligations. [ECF No. 8 ¶ 2]. Plaintiffs respond that Defendant is "attempting to confuse the issues" by discussing the August Submission. [ECF No. 11 at 6]. They urge us to focus on Defendant's failure to respond to the October Submission, which they say was "facially complete" under RESPA because Defendant never communicated any deficiencies. *Id.* At the motion to dismiss stage, we do not assess credibility or settle competing views of the evidence. And while Defendants furnished materials that may be considered at this stage in the proceedings, these documents are far from dispositive. Accepting the allegations in the Complaint as true, Plaintiffs have satisfied the minimal pleading standards. We accordingly recommend that the Motion be **DENIED.**

## Legal Framework

### A. Motion to Dismiss

Rule 12(b)(6) provides for dismissal of a complaint that "fails to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions[;]" "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Put differently, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). For Rule 12(b)(6) purposes, the Court accepts as true all well-pleaded factual allegations in a complaint and draws all reasonable inferences in a

3

plaintiff's favor. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).

At the motion to dismiss stage, courts are generally limited to two fact sources: (1) the complaint, including any exhibits attached to it; and (2) documents that are central to the claims and undisputed in terms of their authenticity. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity." (citing *Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002)). Thus, "a document attached to a motion to dismiss may be considered by the court . . . only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley*, 304 F.3d at 1134; *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

B. RESPA

RESPA is "a consumer protection statute that regulates the real estate settlement process." *Clark v. HSBC Bank USA Nat'l Ass'n*, 664 F. App'x 810, 812 (11th Cir. 2016). The statute empowers the Consumer Financial Protection Bureau to promulgate certain consumer protection regulations. *See* 12 U.S.C. § 2617(a). One such regulation, Regulation X, "places certain obligations on mortgage servicers when a borrower submits a loss mitigation application and lays out distinct procedures and rules for submitting such applications regarding measures for assessing completeness, timelines and evaluation protocols." *Clark*, 664 F. App'x at 812 (citing 12 C.F.R. § 1024.41).

When a servicer receives an application 45 days or more before the foreclosure sale, the servicer must determine whether the application is complete and communicate that decision to the borrower in writing within 5 days. *Id.* (citing 12 C.F.R. § 1024.41(b)). An application is complete when the "servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1).

If an application is incomplete, the servicer must notify the borrower of the deficiency, identify the missing documents, and allow the borrower to supplement the application. *See id.* § 1024.41(b)(2)(i)(B), (c)(2)(iv). Once the borrower supplies the missing information—or if the servicer deems the application complete from the start—the application is considered "facially complete" for purposes of § 1024.41. *Id.* § 1024.41(c)(2)(iv). The servicer then has 30 days to review the borrower's complete application. *Id.* § 1024.41(c)(1)(i). If a servicer fails to notify the borrower of missing application materials or fails to evaluate a completed application within the 30-day window, the borrower can sue under RESPA. *See id.* § 1024.41(a) ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA[.]"); 12 U.S.C. § 2605(f) (creating a private right of action for a borrower to sue "[w]hoever fails to comply with any provision of this section").

### Discussion

Plaintiffs allege that Defendants violated RESPA and Regulation X by failing to respond to the October Submission, which they frame as an independent loss mitigation application. [ECF No. 1 ¶¶ 32–34]. They say that the October Submission was "facially complete" because Defendants "failed to acknowledge receipt of the loss mitigation application and advise that additional documents were required[.]" [ECF No. 11 at 6]. Defendant argues that it was under no obligation to respond to the October Submission, which was simply a supplement to the August Submission. [ECF No. 8 ¶ 2]. The parties' arguments hinge on conflicting views of the October Submission, views supported by nothing more than their say-so: Plaintiffs claim the October Submission is a loss mitigation application and Defendant disagrees. At the motion to dismiss stage, however, we focus on the allegations in the Complaint. And while we may consult materials outside the Complaint, provided they are undisputed and central to the claims at bar, merely pointing to documents that reframe or challenge the representations in the pleading will not support dismissal.

As a threshold matter, we define the record for purposes of the Motion. First, the complaint

and its two attachments—Plaintiffs' December 19, 2025 letter to Defendant and a related delivery receipt, [ECF No. 1-3 & 1-4]—come in.   *See* [ECF Nos. 1, 1-3, 1-4].   Second, the Motion's attachments—Defendant's response to the August Submission, the October Submission, and the January 2026 Response [ECF No. 8-1, 8-2, 8-3]—also form part of the record because they are (1) central to Plaintiffs' claims and (2) neither party disputes their authenticity.   *Horsley*, 304 F.3d at 1134. Indeed, Plaintiffs use the October Submission to advance one of their arguments.   [ECF No. 11 at 2]. And while Plaintiffs claim that they did not receive the January 2026 Response, they never say it is inauthentic.   *Horsley*, 304 F.3d at 1134 (explaining that a document is "undisputed" for purposes of review at the motion to dismiss stage when "the authenticity of the document is not challenged."). Referring to the document as an "alleged response," [ECF No. 11 at 3], does not constitute an authenticity challenge.   As for the final document, Defendant's response to the August Submission, Plaintiffs never mention it.   Naturally, Plaintiffs cannot be said to question the authenticity of a document they never address.

Moving to the substance of the Motion, Defendant argues that Plaintiffs failed to plead a RESPA claim because the October Submission "was additional documentation" that did not trigger a duty to respond.   [ECF No. 8 ¶ 2].   Because that appears to be the sole basis for the Motion, we limit our analysis to that issue.[3]   Defendant's argument fails on both the facts and the law.

First, the law: Defendant identifies no legal authority for its key proposition that RESPA does not require loan servicers to respond to successive loss mitigation submissions.   Defendant offers two cases, which it claims "directly" address the issue.   *Id.* ¶¶ 19–20.   They do not.   In *Sutton v. Ocwen Loan*

---

[3] Aside from a passing reference, Defendant fails to develop a damages-based challenge the Complaint.   [ECF No. 8 ¶3 (asserting that "Plaintiff[s] ha[ve] not alleged facts sufficient to establish a breach of any duty imposed by RESPA, nor any cognizable damages resulting from such alleged breach")].   Consequently, the argument is waived.   *See Atmos Nation, LLC v. BnB Enter., LLC*, No. 16-62083-CIV, 2017 WL 3763949, at *2 (S.D. Fla. Apr. 24, 2017) ("It is axiomatic that arguments not supported and properly developed are deemed waived. . . . [T]he onus is upon the parties to formulate arguments.") (internal quotation marks omitted)).

*Servicing, LLC*, the court held that a loan servicer who responds directly to the borrower, as opposed to the borrower's attorney, properly discharges its duties under RESPA.  No. 16-CV-81234, 2016 WL 4417688, at *3 (S.D. Fla. Aug. 19, 2016).  Thus, *Sutton* cannot support Defendant's central premise. Defendant's reliance on *Todd v. Ocwen Loan Servicing, LLC*, No. 17-CV-60454, 2017 WL 1650622 (S.D. Fla. May 2, 2017), is likewise misplaced.  In that case, the borrower's RESPA claim rested on the servicer's supposed failure to respond.  *Todd*, 2017 WL 1650622 at *1.  But the servicer *had* responded and attached that postmarked letter to its motion to dismiss.  *Id.* at *2.  Rejecting the borrower's argument that the document could not form part of the motion to dismiss record, the court explained that the letter met the two main requisites for consideration—centrality and authenticity.  *Id.* at *3–4. Perhaps Defendant highlighted these cases because it, too, included material outside the four corners of the Complaint.  Fair enough, and as we noted above, the documents attached to the Motion should be considered.  But in counting the trees, Defendant misses the forest.  Indeed, Defendant fails to explain why the October Submission was "additional documentation" as opposed to a new application.  Nor does Defendant identify any authority to suggest that a borrower's subsequent applications, even incomplete ones, fall outside RESPA's ambit.

As best we can discern, there are two cases that speak to the present facts and arguments— and the parties cite neither.  *Walker v. PHH Mortgage Corporation*, a Southern District of Florida case, centered on a servicer's alleged failure to respond to loss mitigation communications.  No. 22-CV-23276, 2023 WL 6621201 (S.D. Fla. Oct. 11, 2023).  The borrower sent a loss mitigation application and, after the lender pointed out certain missing documents, the borrower provided additional materials to complete the application.  *Id.* at *3, *8.  As it turned out, the additional materials fell short, and the application remained incomplete.  *Id.*  But the lender never communicated these lingering deficiencies to the borrower, which prompted the borrower to sue under RESPA.  *Id.*  The lender moved for summary judgment, arguing that the relevant notice provision "only applies to loss

mitigation applications themselves, not to submissions of additional documents." *Id.* at *8. For support, the lender relied on the plain language of Section 1024.41(b)(2)(i)(B) of Regulation X—the key regulation here—and *Hurst v. Caliber Home Loans, Inc.*,[4] where the Sixth Circuit concluded that RESPA's notice provisions apply only to loss mitigation applications. *Id.* The *Walker* Court, underscoring the "merit in having federal courts follow the same course in cases of this kind," aligned itself with the *Hurst* analysis. *Id.* at *9–10. The Court, echoing *Hurst*, anchored its analysis in the regulatory language and accompanying CFPB official interpretation, which instructs loan servicers to exercise reasonable diligence in requesting *additional* application materials, but does not suggest that the "*notice* requirements continue to apply after a servicer has complied with Section [] 1024.41(b)(2)(i)(B) regarding a borrower's loss mitigation application." *Id.* at *10 (emphasis in original).

*Walker* and *Hurst* are relevant, but distinguishable from our case, at least at the present stage. In those cases, the plaintiffs acknowledged that their subsequent communications were not loss mitigation applications. Plaintiffs make no such concession here, which brings us to the facts. Defendant's exhibits show that (1) it responded to the August Submission (suggesting there *was* an August Submission, though Defendant does not supply the submission itself); and (2) Plaintiffs submitted loss mitigation materials in October. These documents fail to address the key question: was the October Submission a new application or was it merely a supplement to the August Submission? The Complaint alleges that the October Submission is a "loss mitigation application." [ECF No. 1 ¶ 17 ("[C]ounsel for Plaintiff[s] submitted a loan modification (loss mitigation) application to Defendant on October 29, 2025 pursuant to 12 C.F.R. § 1041.41.")]. Nothing in Defendant's attachments renders that allegation implausible. Defendant does not argue that once a borrower

---

[4] 44 F.4th 418, 426–27 (6th Cir. 2022).

submits a loss mitigation application, it can never abandon that application and pursue a new one.[5] Nor would that persuade us because Defendant's January 2026 Response invites Plaintiffs to submit "a new, complete loss mitigation application" due to the prior application's expiration.  [ECF No. 8-3 at 4].  Because Plaintiffs clear the hurdle of alleging "enough facts to state a claim that is plausible on its face,"[6] the Motion should be denied.

* * *

Within **14 days** from the date of this Report and Recommendation, the parties shall file written objections, if any, with the District Judge.  Failure to file timely objections shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g.*, *Patton v. Rowell*, 678 F. App'x 898, 901 (11th Cir. 2017); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 768–69 (11th Cir. 2016).

**DONE AND RECOMMENDED** in the Southern District of Florida on June 18, 2026.

_____
**YENEY HERNANDEZ**
**UNITED STATES MAGISTRATE JUDGE**

cc:      counsel of record

---

[5] This is different from a "duplicative request" under 12 C.F.R. 1024.41(i), which releases servicers from RESPA's loss mitigation requirements when (1) they have previously complied with the regulation in processing a *complete* loss mitigation application submitted by the borrower; and (2) the borrower has been delinquent at all times since submitting the prior complete application.
[6] *Twombly*, 550 U.S. at 570.